[No. 14979.  *En Banc.*  January 10, 1919.]

# W. E. HANSON, *as State Bank Examiner, Respondent,* v. J. A. SODERBERG *et al., Appellants.*[1]

BANKS AND BANKING (3.)—STOCKHOLDER'S LIABILITY—ASSESSMENT OF STOCK—POWER OF EXAMINER.  Under Rem. Code, § 3327, of the banking act, which provides that the state bank examiner may if necessary to pay debts, enforce the individual liability of stockholders, the bank examiner has authority to determine the necessity and amount of an assessment upon stockholders of an insolvent bank without resorting to a judicial inquiry.

SAME.  The same would be true of the act of 1917, p. 290, § 35, which gives the state bank examiner power to enforce the stockholder's liability as soon after taking possession as in his judgment may be necessary and making the failure of the stockholders to make good any impairment of the assets conclusive evidence that the double liability is necessary.

SAME.  Laws of 1917, p. 290, § 35, relating to the authority to enforce the statutory liability of bank stockholders bears upon the remedy only, and is accordingly applicable to an assessment upon a bank in liquidation under the act of 1915.

SAME (3)—CONSTITUTIONAL LAW (42)—EXECUTIVE POWERS—EN-CROACHMENT ON JUDICIARY—BANK EXAMINER.  Conferring authority upon the state bank examiner to make and enforce an assessment upon the stockholders of an insolvent bank is not objectionable as conferring judicial power upon a ministerial officer.

Appeal from a judgment of the superior court for King county, Smith, J., entered October 27, 1917, upon findings in favor of the plaintiff, in an action to enforce the superadded liability of a stockholder of an insolvent bank, tried to the court.  Affirmed.

*Lockerby & Wright,* for appellants.

*M. M. Richardson* and *Hugh C. Todd* (*F. C. Reagan,* of counsel), for respondent.

MAIN, C. J.—This action was brought by the state bank examiner to recover upon the superadded lia-

[1]Reported in 177 Pac. 827.

bility of a stockholder in an insolvent state banking corporation. The trial resulted in a judgment in favor of the plaintiff. From this, the defendant appeals.

The facts necessary to present the legal question involved may be briefly stated. On or about July 19, 1915, the First International Bank of South Bend, being then insolvent, came into the possession and under the control of the respondent, as state bank examiner, for liquidation and distribution of its assets, under and by virtue of the provisions of the laws of 1915 of this state. The capital stock of the bank was in the sum of $50,000 divided into 500 shares of the par value of $100 per share, all of which had been subscribed and paid for. After the bank came into the possession of the state bank examiner, that officer ascertained that its liabilities were about $235,000, and that the value of its assets was $135,000, thus leaving a balance of liabilities over the assets in the sum of approximately $100,000. The state bank examiner thereupon determined that it was necessary that the stockholders of the bank be assessed upon their super-added liability of the stock to the full extent of the par value thereof. A notice, coupled with a demand for payment, was given to each of the stockholders. The appellant was the owner of 100 shares of the stock, and his liability measured by the full par value of such stock was $10,000. The appellant refusing to respond to the notice and make payment as demanded, the present action was instituted. The trial resulted in a judgment against the appellant for $10,000.

The first question presented is whether, under the banking act [Laws of 1915, ch. 98, p. 279 (Rem. Code, § 3303-1)], the state bank examiner is clothed with power to finally determine the necessity for making assessment upon the stock of an insolvent bank and the

amount of such assessment without any judicial inquiry into the matter. The constitution of· this state, in § 11, art. 12, provides that each stockholder of any banking corporation

"shall be individually and personally liable equally and ratably, and not one for another, for all contracts, debts and engagements of such corporation or association accruing while they remain such stockholders, to the extent of the amount of their stock therein at the par value thereof, in addition to the amount invested in such shares." .

Substantially this same provision has been carried into the statute. Rem. Code, § 3327. In 1915, the legislature passed an act relating to the administration of banks and trust companies by the state bank examiner. This is a comprehensive statute and provides in detail how the affairs of an insolvent state bank shall be administered by the state bank examiner. Among other provisions, it contains a clause that he "may, if necessary to pay the debts of such bank or trust company, enforce the individual liability, if any, of the stockholders."

The appellant claims that, under the provisions of this statute, and especially under the quoted language, there has not been conferred upon the state bank examiner the power to determine the assets and liabilities of the bank and, if he finds that the assets are less than the liabilities, to make an assessment upon the stockholders without a judicial inquiry and determination as to the necessity for such assessment. On the other hand, the respondent contends that the state bank examiner, under the statute, does have such power.

Without setting out in detail the corresponding provisions of the national bank act (U. S. Comp. St., 1916,

§ 9821; Rev. Stat. § 5234), it may be said that the statute of this state bears a striking similarity in many of its provisions to that act of Congress. Under the national bank act the comptroller of the currency administers the affairs of an insolvent national bank and determines the liability, if any, of the stockholders without resorting to a judicial inquiry. That act contains the provision that the comptroller of the currency "may, if necessary to pay the debts of such association, enforce the individual liability of the stockholders." (U. S. Comp. St., 1916, § 9821.) In effect, this language is the same as that contained in the legislative act of this state above quoted.

The United States supreme court, construing the Federal act, has held that the comptroller has power to decide when it is necessary to institute proceedings against the stockholders of an insolvent national bank to enforce their personal liability; that this question is referred to his judgment and discretion, and that his determination thereof is conclusive. In *Kennedy v. Gibson*, 75 U. S. (8 Wall.) 498, upon this question, it is said:

"The receiver is the instrument of the comptroller. He is appointed by the comptroller, and the power of appointment carries with it the power of removal. It is for the comptroller to decide when it is necessary to institute proceedings against the stockholders to enforce their personal liability, and whether the whole or a part, and if only a part, how much, shall be collected. These questions are referred to his judgment and discretion, and his determination is conclusive. The stockholders cannot controvert it. It is not to be questioned in the litigation that may ensue. He may make it at such time as he may deem proper, and upon such data as may be satisfactory to him. This action on his part is indispensable, whenever the personal liability of the stockholders is sought to be en-

forced, and must precede the institution of suit by the receiver. The fact must be distinctly averred in all such cases, and if put in issue must be proved.''

The national bank act provides for the appointment of a receiver by the comptroller, and that the receiver acts under the direction of the comptroller. The view of the court, as expressed in *Kennedy v. Gibson, supra,* has been adhered to by that court in *Casey v. Galli,* 94 U. S. 673, and *United States v. Knox,* 102 U. S. 422.

The bank act of the state of Texas contains a provision that the bank commissioner ''may, if necessary to pay the debts of such state bank, enforce the individual liability of the stockholders.'' Construing this statute, the court of civil appeals of Texas placed upon it the same construction which the United States supreme court had placed upon the national bank act. *Collier v. Smith* (Tex. Civ. App.), 169 S. W. 1108; *Stringfellow v. Patterson* (Tex. Civ. App.), 192 S. W. 555.

The supreme court of Arkansas, construing the bank act of that state, which contained a provision similar to that contained in the national bank act, took the same view of the scope of the power of the state bank commissioner to determine the assets and liabilities of an insolvent bank and the necessity for an assessment upon the stockholders; that is, he had the power to do these things without resorting to a judicial inquiry. *Davis v. Moore,* 130 Ark. 128, 197 S. W. 295.

So far as our inquiry discloses, no court of last resort in any state, when the precise question was directly presented, construing a law of its particular state, has taken the opposite view. This statement is made with full knowledge and after careful reading of all the authorities cited in appellant's brief. If we gather correctly the force of the argument in that

brief, it is to the effect that the courts of Tennessee, New York, Oregon and Minnesota have taken an opposite view. In *Van Tuyl v. Carpenter,* 135 Tenn. 629, 188 S. W. 234, the superintendent of banks of the state of New York, who had taken possession of an insolvent bank in that state, brought an action against a stockholder residing in the state of Tennessee. It was there held that an act which gave to the superintendent of banks power to determine the assets and liabilities of a bank and the necessity of bringing an action upon the stockholders' superadded liability without a judicial inquiry was contrary to the public policy of the state of Tennessee. That court reviews and criticises the decisions of the supreme court of the United States above cited. But whether the question was sufficiently discussed by that court in those cases does not seem to us material, because, as shown by the decisions, the question as determined is the deliberate judgment and settled doctrine of that court. How the supreme court of Tennessee would construe a statute of that state if the legislature should pass one similar to the national bank act or the statute of this state, and thereby declaring the public policy of the state to be different from that stated by the court, is a question which only that court can determine in the event the legislature should pass such a statute.

In *Sargent v. Waterbury,* 83 Ore. 159, 161 Pac. 443, 163 Pac. 416, the action was upon the balance due upon stock subscriptions and not upon the superadded liability. No reference is made in that opinion to the national bank act or the decisions of the United States supreme court construing it. Had the court intended to take a different view from that entertained by the United States supreme court it doubtless would have referred to those decisions. Whether the same rule

should be applied when the action is for the balance due upon a stock subscription as where it is upon the superadded liability is not in the case now before us, and therefore is not pertinent to the question here to be determined.

The case of *Ueland v. Haugan,* 70 Minn. 349, 73 N. W. 169, is not in point because the statute which the court was there construing is essentially different from the national bank act, the statutes of this state, Texas and Arkansas. The statute of Minnesota contains an express provision by which the superintendent of banks is to apply to a court of competent jurisdiction.

In the *Matter of the Union Bank of Brooklyn,* 204 N. Y. 313, 97 N. E. 737, the question before us for determination was not involved. It must be admitted, however, that there are found in the New York Supplement Reports certain cases which are not in harmony with the cases above referred to from the supreme court of the United States, the court of civil appeals of Texas, and the supreme court of Arkansas.

A holding that the state bank examiner may determine the difference between the liabilities and the assets of an insolvent bank and the necessity for an assessment of the stock gives the act a construction which renders it speedy, efficient and economical. If the act should be construed that the state bank examiner must resort to a court of equity to have these matters determined before he can bring an action upon the stock, the procedure would be substantially the same as it was prior to the passage of the statute. It is well known that, under that procedure, the administration of insolvent banks was subject to much delay and involved, many times, a large amount of costs and expenses. It is to the interest of the creditors,

and also the stockholders, that the affairs of an insolvent banking institution should be wound up with reasonable expedition and with no more expense than the necessities of the situation may require. A review of the act of 1915 and a comparison of it with the national bank act indicate that the legislature must have had the Federal act in mind at the time the statute of this state was passed, and also the construction which the United States supreme court had given the Federal act. We think that the state bank examiner, in proceeding as he did in this case, was acting within the power with which he was clothed by the statute.

If the proper construction of the act of 1915 were not that above indicated, it would not follow that the judgment should be reversed. In 1917, the legislature of this state passed a banking act which, in its terms conferring power upon the bank examiner, is somewhat more comprehensive than was the act of 1915. Under the 1917 act, the state bank examiner may enforce the superadded liability of the stockholders "as soon after taking possession of any bank or trust company as in his judgment the same may be necessary," and the failure of the stockholders of any bank or trust company, immediately upon possession being taken by the examiner, to make good all impairment of its assets shall be conclusive evidence that the enforcement of "double liability is necessary." Laws of 1917, ch. 80, p. 290, § 35.

By this latter act it will be noted that the liability is to be enforced as soon after taking possession of the bank as in the judgment of the state bank examiner the "same may be necessary," and the failure of the stockholders to make good any impairment of the bank's assets shall be conclusive evidence that the enforcement of "double liability is necessary."

Since the assessment in the present case was made under the 1915 act, and the bank was in the process of liquidation when the 1917 act took .effect, it is the appellant's claim that the latter act can in no event be held applicable here. These statutes bear upon the remedy only. The liability of the stockholders remains the same as it was prior to their passage. A statute which bears upon the remedy only is applicable in liquidating the affairs of the bank even though passed subsequent to its insolvency.

In Morse on Banks and Banking (5th ed.), vol. 2, § 677, it is said:

"Thus where, at the time of the insolvency, the only remedy against the shareholders was by proceedings in equity on the part of the bill-holders, and subsequently, pending the liquidation of the affairs of the bank, a new statute was passed creating the machinery of the bank commissioners, and providing a simple and expeditious means whereby they could enforce collections from shareholders (the amount of actual liability not, of course, being varied), it was held that the shareholders in the already insolvent bank could not object to the application of this new statute to their own case. It bore upon the remedy only, not upon the liability. . . ."

The appellant further contends that, if a construction be given the statutes such as above indicated, then it cannot be sustained because it confers upon a ministerial officer judicial power. This question has also been decided against appellant's contention by the United States supreme court. *Bushnell v. Leland,* 164 U. S. 684; *In re Chetwood,* 165 U. S. 443. In the case last cited it is said:

"It has been so often decided that the authority vested in the Comptroller to appoint a receiver of a defaulting or insolvent national bank, or to call for a ratable assessment upon its stockholders, is not open to

objection because vesting that officer with judicial power in violation of the Constitution, that we have recently declined to re-examine that question.''

It is probable that, in cases analogous in principle, the decisions of this court could be resorted to as sustaining the proposition that the act does not confer judicial power upon the state bank examiner in violation of the constitution. At the risk, however, of having this opinion appear superficial we will not enter upon a review of these cases, because to do so would extend the opinion, as it seems to us, unnecessarily. What remedy a stockholder would have if the state bank examiner were proceeding arbitrarily or wrongfully is not before us in this case, and it is not necessary, therefore, here to discuss or determine that question.

The judgment will be affirmed.

All concur.