# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

## DIVISION II

| | |
|---|---|
| BIG BLUE CAPITAL PARTNERS OF WASHINGTON, LLC, | No. 56735-1-II |
| Appellant, | |
| v. | |
| REGIONAL TRUSTEE SERVICES CORPORATION; SPECIALIZED LOAN SERVICING, LLC; and U.S. BANK NATIONAL ASSOCIATION, as trustee for Terwin Mortgage Trust 2005-4HE, Asset Backed Certificates, Series 2005-4HE, | UNPUBLISHED OPINION |
| Respondents, | |

VELJACIC, J. — Big Blue Capital Partners of Washington LLC (Big Blue) appeals the trial court's order granting Specialized Loan Servicing (SLS) and U.S. Bank National Association's (hereafter jointly "U.S. Bank") motion for summary judgment and denying its motion for reconsideration. Big Blue argues that genuine issues of material fact remain regarding whether the 2013 version of the promissory note was indorsed, and whether Apreva, Inc. could validly create a deed of trust. Both parties request attorney fees on appeal.

We hold that the trial court did not err in granting U.S. Bank's motion for summary judgment because Big Blue failed to present evidence establishing a genuine issue of material fact and U.S. Bank is entitled to a judgment as a matter of law. We also hold that the trial court did

not abuse its discretion in denying Big Blue's motion for reconsideration. We grant U.S. Bank's request for attorney fees on appeal as the prevailing party under the deed of trust. Accordingly, we affirm.

FACTS

I.     BACKGROUND[1]

In 2004, Dawne Delay obtained a loan from Apreva, Inc. to purchase a residential property. The loan was evidenced by a promissory note and secured by a deed of trust encumbering Delay's real property. The promissory note and the deed of trust listed "Apreva, Inc., a Washington Corporation" as the lender, Mortgage Electronic Registration Systems (MERS) as the beneficiary, and Chicago Title Insurance Company as the trustee.

Sometime between 2005 and 2006, Apreva, Inc. indorsed the promissory note in blank to U.S. Bank.[2] At this time, SLS was U.S. Bank's loan servicer. After this indorsement, U.S. Bank possessed the promissory note, and SLS began servicing the loan.

Pursuant to the deed of trust, Delay agreed to make monthly mortgage payments to Apreva, Inc. as required under the promissory note. Delay defaulted on the promissory note in March 2012. On October 18, after Delay filed for bankruptcy, MERS assigned the deed of trust to U.S. Bank.

---

[1] Some of the background facts, but not all, are taken from this court's January 9, 2018, opinion in *Big Blue Cap. Partners of Washington, LLC., Reg;l Tr. Servs. Corp*, No. 46116-1-II (Wash. Ct. App. Jan. 9, 2018) (unpublished), https://www.courts.wa.gov/opinions/pdf/D2%2046116-1-II%20Unpublished%20Opinion.pdf. We will note for the reader where facts are contested in the appeal before us.

[2] Although not contested in this court's prior opinion, whether the promissory note was indorsed in blank is a key issue in this appeal.

The following month, SLS filed a motion for relief from an automatic stay to pursue foreclosure proceedings against the property. With its motion, SLS attached a copy of the note, which was not indorsed in blank.[3]

On December 12, Delay's bankruptcy trustee deeded Delay's real property to Big Blue. The trustee's deed stated that Big Blue was subject to all encumbrances that existed at the time.

In May 2013, U.S. Bank recorded an appointment of successor trustee, appointing Regional Trustee Services Corporation (RTSC) as the deed of trust's successor trustee. In August, U.S. Bank again recorded an appointment of successor trustee, appointing RTSC as the deed of trust's successor trustee. Later in August, RTSC recorded a notice of trustee's sale, stating that the nonjudicial foreclosure sale of Big Blue's property was scheduled for November.

In November, Big Blue filed a complaint against only RTSC. In its complaint, Big Blue claimed that RTSC violated the Deeds of Trust Act and the Consumer Protection Act (CPA).[4] Big Blue's complaint alleged, among other things, that the promissory note and deed of trust executed between Delay and Apreva, Inc. were invalid because "Apreva, Inc., a Washington Corporation" did not exist at the time the note and deed of trust were executed. To support its contention, Big Blue attached an exhibit showing that Apreva, Inc. was not a Washington corporation and had not been registered to conduct business in Washington. Big Blue also sought declaratory judgment,

---

[3] The facts in this paragraph are taken from the record provided to this court in the current appeal, and were not part of the facts established as part of this court's previous opinion.

[4] Big Blue appears to have abandoned its CPA claim on appeal as it provided no briefing on the subject to this court. The court generally does not consider argument that has not been briefed or argued in a meaningful way. *Ameriquest Mortg. Co. v. State Att'y Gen.*, 148 Wn. App. 145, 166, 199 P.3d 468 (2009), *aff'd on other grounds by Ameriquest Mortg. Co. v. Wash. State Office of Att'y. Gen.*, 170 Wn.2d 418, 241 P.3d 1245 (2010).

injunctive relief, and damages.  Later in November, the superior court allowed U.S. Bank to intervene.

Big Blue sought a preliminary injunction enjoining RTSC from proceeding with the nonjudicial foreclosure sale.  In opposition to Big Blue's motion, U.S. Bank provided an exhibit showing that "Apreva Financial Corporation" was incorporated in Washington and was registered to do business in Washington from 1998 until 2007.

The superior court granted Big Blue's motion for a preliminary injunction restraining the foreclosure sale and required that Big Blue post a $200,000 bond.  Big Blue failed to post the bond, and the preliminary injunction expired.  RTSC proceeded with the foreclosure sale and sold the property in December 2013.

U.S. Bank filed a motion for summary judgment dismissal of Big Blue's claims.  In support of its motion, U.S. Bank provided documents showing that Apreva, Inc. was registered as a foreign corporation in Utah at the time the promissory note and deed of trust were executed.

Two days before the hearing on U.S. Bank's motion for summary judgment, Big Blue filed an amended complaint, adding claims against U.S. Bank.  In its amended complaint, Big Blue claimed that U.S. Bank violated the CPA and caused Big Blue to incur damages by improperly selling the property.  At the summary judgment hearing, the superior court effectively rejected Big Blue's amended complaint, stating: "[Big Blue] cannot refer to a First-Amended Complaint that [it] didn't seek leave of the court to file in the first place. . . .  You need to seek leave of the court as to whether or not you can file an amended complaint at this point."  *Big Blue Cap. Partners of Washington, LLC., Reg'l Tr. Servs. Corp*, No. 46116-1-II, slip op. 4-5 (Wash. Ct. App. Jan. 9, 2018)      (unpublished),      https://www.courts.wa.gov/opinions/pdf/D2%2046116-1-II%20Unpublished%20Opinion.pdf (internal citation omitted).  The superior court granted U.S.

Bank's motion for summary judgment and dismissed all of Big Blue's claims with prejudice. Big Blue appealed to this court.

On January 9, 2018, this court issued its opinion holding that the trial court erred in granting summary judgment dismissal of Big Blue's claims because the trial court failed to consider Big Blue's amended complaint while the motion for summary judgment was pending, there were genuine issues of material fact regarding Apreva, Inc.'s corporate existence, and further that the trial court erred in concluding that Big Blue had waived its right to object to foreclosure when it failed to restrain the foreclosure sale.[5] We remanded for further proceedings.

II.    PROCEEDINGS AFTER REMAND—SLS AND U.S. BANK'S 2019 MOTION FOR SUMMARY JUDGMENT

In October 2019, U.S. Bank filed a joint motion for summary judgment. On October 24, Big Blue filed a motion to compel discovery.

As part of their motions, U.S. Bank attached several documents showing (1) Apreva, Inc. as a Washington Corporation and (2) that the note had been in U.S. Bank's possession and indorsed in blank. The first series of documents were the articles of incorporation for Apreva, Inc., showing it was incorporated in Washington on June 6, 1998. On November 5, 2004, Apreva, Inc. changed its name to Apreva Financial Corporation per an amendment to its articles of incorporation filed with the Washington Secretary of State. The second set of documents were declarations from several employees, including Mark McCloskey and Brian Sullivan. In his sworn declaration, McCloskey stated that he was vice president of SLS and that both the original note and deed of trust had been in U.S. Bank's possession from 2004 until the property sold in 2015 via its document

---

[5] Following the appeal to this court in 2018, RTSC was placed into receivership and did not participate in the litigation after remand. It is not a party to this appeal.

custodian, Deutsche Bank.[6]  He added that as of March 1, 2005, SLS serviced the loan on the property on behalf of U.S. Bank.  `Similarly, Sullivan noted in his sworn declaration that the SLS imaging filing system contained a digitized copy of the note to the property and showed it was created in October 2012 and was indorsed in blank at that time.  Sullivan continued "[i]t necessarily follows that the original hard copy promissory note was indorsed in blank before that date" and attached a "true and correct copy" of the note as it existed in October 2012.  Clerk's Papers (CP) at 483.

At the hearing, U.S. Bank argued that Big Blue failed to present any evidence to support its claims.  Big Blue argued that there was a genuine issue of material fact as to whether U.S. Bank was a valid holder of the note.  Specifically, it asserted that there was no indorsement from Apreva, Inc. or Apreva Financial Corporation to another entity, including U.S. Bank.  This was true, Big Blue asserted, because there was only an unindorsed note presented by U.S. Bank to the bankruptcy court in 2012, whereas now U.S. Bank presented an indorsed in blank version of the note, which they now contend has been in existence since before the note was presented to the bankruptcy court.[7]

U.S. Bank responded that the presentment of an old version of an electronic document to the bankruptcy court, did not unavoidably demonstrate fraud, but instead was simply indicative that the wrong copy of the document was presented.  Further, U.S. Bank asserted that Sullivan's

---

[6] Big Blue also mentions hearsay in passing but fails to analyze any suggested failures of U.S. Bank to meet the business records exception to the hearsay prohibition.  Accordingly, we do not address the issue.  *Cowiche Canyon Conservancy v. Bosley*, 118 Wn.2d 801, 809, 828 P.2d 549 (1992).

[7] Big Blue also argued that the order on summary judgment needed to include findings and conclusions.  Under CR 52(a)(5)(B), findings are not necessary on summary judgment.  *See also* CR 56(h).

declaration states the note was created in October 2012 and was indorsed in blank; it continued that Big Blue offered no evidence showing the note was not properly indorsed even if indorsement occurred after Apreva, Inc. was dissolved. This was true, according to U.S. Bank, because the indorsement was part of the winding-up process related to dissolution.

Moreover, U.S. Bank argued that a non-indorsed note existing at the time of bankruptcy in October 2012 was not a genuine issue of *material* fact because U.S. Bank provided evidence that nevertheless as of October 2012, the note was indorsed in blank—well before the foreclosure, which did not begin until 2013.

The trial court granted U.S. Bank's motion for summary judgment. Essentially, the court concluded that the evidence submitted to it after the 2018 remand demonstrated that Apreva, Inc. continued its existence as a Washington corporation in spite of its name change and accordingly had the ability to create the note and deed of trust at issue here. It also concluded that the note had been indorsed in blank prior to foreclosure, giving the holder, U.S. Bank, authority to begin foreclosure proceedings.

On January 18, 2022, Big Blue filed a motion for reconsideration. U.S. Bank opposed the motion. The trial court denied Big Blue's motion, entering an order on February 1. The court also later awarded U.S. Bank attorney fees and costs. Big Blue appeals.

ANALYSIS

I.     SUMMARY JUDGMENT

We review summary judgment orders de novo. *Cornwell v. Microsoft Corp.*, 192 Wn.2d 403, 410, 430 P.3d 229 (2018). We perform the same inquiry as the trial court in its review. *City of Seattle v. Long*, 198 Wn.2d 136, 145, 493 P.3d 94 (2021).

We consider the facts and reasonable inferences in the light most favorable to the nonmoving party. *Meyers v. Ferndale Sch. Dist.,* 197 Wn.2d 281, 287, 481 P.3d 1084 (2021). Summary judgment is appropriate where "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." CR 56(c). "A genuine issue is one upon which reasonable people may disagree; a material fact is one controlling the litigation's outcome." *Youker v. Douglas County*, 178 Wn. App. 793, 796, 327 P.3d 1243 (2014). "The moving party bears the burden of showing that there is no genuine issue of material fact. If this burden is satisfied, the nonmoving party must present evidence demonstrating material fact. Summary judgment is appropriate if the nonmoving party fails to do so." *Walston v. Boeing Co.*, 181 Wn.2d 391, 395-96, 334 P.3d 519 (2014) (internal citations omitted).

A.      Apreva Existed at The Time of Contracting and When the Note was Indorsed.

As an initial matter, Big Blue argues that Apreva, Inc. could not have entered into the contract in the first place as it no longer existed in 2007. However, the record is clear in that Apreva, Inc. was incorporated in Washington in 1998, changed its name in 2004 to Apreva Financial Corporation before the loan was made to Delay. It continued in existence until 2007 and Big Blue presents no competent evidence to the contrary.

Big Blue has created no issue of fact as to this point. Apreva remained in existence in spite of its name change, so it had the ability to contract at the time the note and deed of trust were executed. *See German-Am. Mercantile Bank v. Foster*, 116 Wash. 313, 314, 199 P. 314 (1921) ("There was but one corporation. The amending of its articles did not end its existence."). There exists no issue of material fact that Apreva remained a corporate entity at the time of contracting and indorsing the subject documents. U.S. Bank is entitled to judgment as a matter of law, and the trial court did not err in concluding accordingly.

B.    U.S. Bank was Properly Considered the Holder and Could Therefore Begin Foreclosure Proceedings.

1.    U.S. Bank was the Holder Because Apreva Was Able to Indorse the Note During the Winding Up Process

Big Blue argues that U.S. Bank did not indorse the note before it ceased to exist.  However, pursuant to RCW 23B.14.050(1) a corporation

continues its corporate existence but may not carry on any business except that appropriate to wind up and liquidate its business and affairs, including:
(a) Collecting its assets;
(b) *Disposing of its properties* that will be applied toward satisfaction or making reasonable provision for satisfaction of its liabilities or will otherwise not be distributed in kind to its shareholders, but in any case subject to applicable liens and security interests as well as any applicable contractual restrictions on the disposition of its properties;
. . . .
(e) *Doing every other act necessary to wind up and liquidate its business and affairs.*

(Emphasis added.)  So, the fact that the note may have been indorsed during Apreva, Inc.'s winding up process does not invalidate the endorsement as a corporation's existence continues after dissolution for the purposes of winding up.  *Equipto Div. Aurora Equip. Co. v. Yarmouth*, 134 Wn.2d 356, 365, 950 P.2d 451 (1998) ("a corporation's existence does continue after dissolution").

In the light most favorable to Big Blue, the note was indorsed before foreclosure, U.S. Bank was the holder of the note and thereby had authority to exercise remedies due to a holder, in this case foreclosure.  *See Terhune v. N. Cascade Tr. Servs., Inc.*, 9 Wn. App. 2d 708, 723, 446 P.3d 683 (2019) ("Under RCW 62A.3-301, the holder of an instrument is entitled to enforce an instrument. *See Brown v. Dep't. of Commerce*, 184 Wn.2d 509, 524-25, 359 P.3d 771 (2015).  A "holder" includes a person in possession of a negotiable instrument that is payable to bearer.  RCW 62A.1-201(b)(21)(A).).

Moreover, Big Blue's only argument is that because the copy of the note was not indorsed during prior bankruptcy proceedings, it was never indorsed. Its argument lacks merit and is insufficient to create an issue of fact as to the later, preforeclosure endorsement of the note. As is well established, a mere suggestion is insufficient to create a genuine issue of material fact requiring denial of summary judgment, especially when the party does not offer any controverting evidence, as is the case here. *See Ofuasia v. Smurr*, 198 Wn. App. 133, 141, 392 P.3d 1148 (2017) ("Conclusory statements of fact do not suffice.").

2.    The Note Was Indorsed by Apreva, Inc.

Big Blue argues that U.S. Bank could not have foreclosed on the property because it was not the valid holder of the note at the time. However, the only support for its allegations is that U.S. Bank presented an unindorsed note to the bankruptcy court in 2012. But the fact that the note may have been unindorsed at the time it was presented at the bankruptcy court is immaterial because U.S. Bank proved the note was (1) in its possession in October 2012 via Sullivan's and McCloskey's uncontroverted declarations, and (2) the note was indorsed in blank by Apreva, Inc.'s vice president—before foreclosure began the following year. Big Blue fails to show there is a genuine issue of material fact on this point. The fact that a note would have been unindorsed beforehand does not create an issue of fact that it was not indorsed at the later date. On this issue U.S. Bank is due judgment as a matter of law; the trial court did not err in so ruling.

II.      JUDICIAL ESTOPPEL[8]

Next, Big Blue argues that the trial court failed to apply judicial estoppel to U.S. Bank's reliance on the 2013 blankly indorsed note when it differed from the note filed with the bankruptcy court in 2012 and based on this court's 2018 opinion.

"Judicial estoppel precludes a party from 'asserting one position in a court proceeding and later seeking an advantage by taking a clearly inconsistent position.'" *Serpanok Constr., Inc. v. Point Ruston, LLC*, 19 Wn. App. 2d 237, 256, 495 P.3d 271 (2021) (internal quotation marks omitted) (quoting *Miller v. Campbell*, 164 Wn.2d 529, 539, 192 P.3d 352 (2008)). In relevant part, the doctrine aims "'to preserve respect for judicial proceedings' and 'to avoid inconsistency, duplicity, and . . . waste of time.'" *Id.* (quoting *Miller*, 164 Wn.2d at 540). We consider three factors to determine whether judicial estoppel applies: "(1) whether the party's later position is clearly inconsistent with its earlier position, (2) whether accepting the new position would create the perception that a court was misled, and (3) whether a party would gain an unfair advantage from the change." *State v. Wilkins*, 200 Wn. App. 794, 803, 403 P.3d 890 (2017).

Here, the analysis fails at the first step because U.S. Bank's position before both the bankruptcy court and trial court has not changed, so it cannot be inconsistent. The point of presenting the note in either court was to show that U.S. Bank had a perfected security interest and evidence of debt. *See Parker Roofing Co. v Pac. First Fed. Sav. Bank*, 59 Wn. App. 151, 155, 796

---

[8] Big Blue first raised judicial estoppel in its motion for reconsideration and accompanying oral argument. However, the argument addressed and used the same factual basis raised in their original response to U.S. Bank's summary judgment motion, which they then sought reconsideration of. Because U.S. Bank did not argue in its briefing to this court that Big Blue should be prohibited from raising it for the first time in their motion for reconsideration, we address it.

P.2d 732 (1990) ("a perfected security interest has priority over a subsequent lien"). In both proceedings U.S. Bank was establishing its priority as a secured creditor.

In contrast, Big Blue presents no evidence that the positions are inconsistent, and instead alleges forgery and hearsay deriving from U.S. Bank's declarations. However, declarations made under the penalty of perjury, based upon personal knowledge and review of business records, are not hearsay and satisfy the requirements of CR 56(e). *Barkley v. GreenPoint Mortg. Funding, Inc.*, 190 Wn. App. 58, 67-68, 358 P.3d 1204 (2015); RCW 5.45.020. The court did not err in rejecting the estoppel argument because Big Blue failed to meet the prongs of judicial estoppel. Again, mere conclusory assertions and allegations are insufficient to defeat summary judgment. *Becker v. Wash. State Univ.*, 165 Wn. App. 235, 246, 266 P.3d 893 (2011) (quoting *Saluteen–Maschersky v. Countrywide Funding Corp.,* 105 Wn. App. 846, 852, 22 P.3d 804 (2001) ("[B]are assertions of ultimate facts and conclusions of fact are alone insufficient to defeat summary judgment.")). Accordingly, the estoppel argument fails.

III.    MOTION FOR RECONSIDERATION

Big Blue argues that the trial court abused its discretion in denying its motion for reconsideration because there was no evidence or reasonable inference to justify granting summary judgment when U.S. Bank presented contradictory affidavits. It also argues that it was prejudiced when the trial court heard the summary judgment motion before scheduling and addressing its motion to compel. We disagree.

We review a trial court's denial of a motion for reconsideration for an abuse of discretion. *Dynamic Res., Inc. v. Dep't of Revenue*, 21 Wn. App. 2d 814, 824, 508 P.3d 680 (2022). "A trial court abuses its discretion if its decision is 'manifestly unreasonable or exercised on untenable

grounds or for untenable reasons.'" *Id*. (quoting *McCoy v. Kent Nursery, Inc.*, 163 Wn. App. 744, 758, 260 P.3d 967 (2011)).

CR 59(a) permits an aggrieved party to file a motion for a trial court to reconsider its decision or order. In relevant part, the court rule provides that:

> Such motion may be granted for any one of the following causes materially affecting the substantial rights of such parties:
> (1) Irregularity in the proceedings of the court, jury or adverse party, or any order of the court, or abuse of discretion, by which such party was prevented from having a fair trial;
> (2) Misconduct of prevailing party or jury; and whenever any one or more of the jurors shall have been induced to assent to any general or special verdict or to a finding on any question or questions submitted to the jury by the court, other and different from the juror's own conclusions, and arrived at by a resort to the determination of chance or lot, such misconduct may be proved by the affidavits of one or more of the jurors
> . . . .
> (7) That there is no evidence or reasonable inference from the evidence to justify the verdict or the decision, or that it is contrary to law;
> (8) Error in law occurring at the trial and objected to at the time by the party making the application; or
> (9) That substantial justice has not been done.

CR 59(a).

Here, Big Blue's motion for reconsideration merely reiterated its previous arguments without asserting any new basis for relief. Moreover, Big Blue's argument that it was prejudiced due to the court's inability to hear its motion for declaratory judgment, its request for findings of fact and conclusions of law, and its motion to compel is unfounded. First, the superior court highlighted that the motion to compel was not heard before the summary judgment hearing due to Big Blue not taking any action. The court stated "it doesn't look [] like it was the court's decision or the court's availability that was the reason it wasn't heard. . . . I don't see the court saying [in

13

Odyssey[9]], 'I'm not going to consider this.'" Rep. of Proc. (RP) (Jan. 28, 2022) at 16. Notably, the court mentioned that a motion to compel was filed *but not noted* before the pandemic. It also mentioned that even with pandemic shutdowns, by the end of May 2020, the court could address civil motions. But again, *Big Blue failed to note their motion on the court's calendar*. The superior court did not err when it denied Big Blue's motion for reconsideration.

IV.     ATTORNEY FEES

Lastly, both U.S. Bank and Big Blue argue they are entitled to attorney fees pursuant to RCW 4.84.330 and the attorney fees provision in the deed of trust and CPA. Under RAP 18.1(b) a party requesting attorney fees must do so in a separate section of his or her opening brief. Moreover, the party must provide applicable law and argument in support of his or her request for attorney fees. RAP 18.1(a); RAP 10.3(a)(6).

Both Big Blue and U.S. Bank request attorney fees in the last section of their opening briefs. And authority for fees is provided—the Deed of Trust states that the "[l]ender shall be entitled to recover its reasonable attorneys' fees . . . in any action or proceeding to construe or enforce any term of this Security Instrument." CP at 1205. Big Blue accurately observes that it would be entitled to fees pursuant to RCW 4.84.330, which operates to make the deed of trust attorney fee provision bilateral. But that is of no moment because U.S. Bank, not Big Blue, is the prevailing party. Accordingly, U.S. Bank is entitled to reasonable attorney fees for this appeal.

---

[9] Odyssey is an integrated e-filing management system for documents and cases at the superior courts. WASHINGTON STATE COURTS, *Judicial Information*, IT Governance, https://www.courts.wa.gov/jis/?fa=jis.ITGRequestDetail&requestID=1308 (last visited Nov. 30, 2023).

CONCLUSION

The trial court did not err in granting summary judgment or in denying Big Blue's motion for reconsideration.

We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

Veljacic, J.

We concur:

Maxa, P.J.

Che, J.